UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EDDIE THOMAS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>DR. MARKS, *et al.*,<br><br>　　　　　　Defendants. | Case No. 3:23-CV-00131-CLB[1]<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 44] |

This case involves a civil rights action filed by Plaintiff Eddie Thomas ("Thomas") against Defendants Myles Etcheberry, Erin Parks, and Dr. Dana Thomas (collectively referred to as "Defendants").[2] Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 44, 47.)[3] Thomas responded, (ECF No. 50), and Defendants replied. (ECF No. 52.) For the reasons stated below, the Court grants Defendants' motion for summary judgment, (ECF No. 44).

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Thomas is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). (ECF No. 1.) On March 24, 2023, Thomas submitted a civil rights complaint under 42 U.S.C. § 1983 together with an application to proceed *in forma pauperis* for events that occurred while Thomas was incarcerated at the Lovelock Correctional Center ("LCC"). (ECF Nos. 1, 1-1.) On October 18, 2023, the District Court entered a screening order allowing Thomas to proceed on an Eighth Amendment deliberate indifference to

---

[1]    The parties consented to the undersigned's jurisdiction to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C.§ 636(c) and Federal Rule of Civil Procedure 73. (*See* ECF No. 53.)

[2]    Defendants S. Austin and S. Pushton are also named in this case. However, no proof of service has been filed for either of these defendants. Therefore, the Court dismisses Defendants S. Austin and S. Pushton pursuant to Fed. R. Civ. P. 4(m).

[3]    ECF No. 47 consists of an exhibit filed under seal in support of the motion for summary judgment.

serious medical needs claim against Defendants. (ECF No. 6.)

Thomas's claim is based upon his allegations that he has suffered from a variety of gastrointestinal issues dating back to 2009, including bloody diarrhea, abdominal pain, and spasms. Thomas claims that these gastrointestinal issues caused him to suffer a loss of energy, difficulty sleeping, and blackouts. (ECF No. 7.) Thomas alleges that Dr. Marks and nurses Pushton and Parks were aware of his ailments through repeated medical kites and grievances.

Thomas further alleged that after a long delay, in February 2023, he was seen by a gastroenterologist who performed a colonoscopy. The specialist diagnosed Thomas with inflammation of the colon/intestines and Crohn's disease. The specialist also said Thomas had polyps that, if left untreated, could result in cancer. On March 9, 2023, Thomas presented an emergency grievance saying he was bleeding and in severe pain to his unit officer, who appears to have been Officer Etcheberry. Etcheberry passed it on to shift sergeant John Doe, who concluded the situation was not an emergency and denied the grievance that day.

At the conclusion of discovery, Defendants filed their motion for summary judgment. (ECF No. 44.) In the motion, Defendants argue that Thomas claims must be dismissed for a variety of reasons, including a failure to exhaust administrative remedies.[4] Specifically, Defendants assert that a review of Thomas's grievance history establishes that Thomas failed to complete the grievance process related to any of his grievances involving his gastrointestinal issues. (ECF No. 44 at 2, 8-9.) Therefore, Defendants argue Thomas's case must be dismissed. (*Id*. at 7-9.)

---

[4] Defendants assert that Thomas's claim must be dismissed because his claim accrued outside the 2-year statute of limitations. (ECF No. 44 at 6-7.) Specifically, Defendants assert that Thomas admits that his gastrointestinal issues began in 2009 and therefore any claim he has for these issues accrued in 2011. (*Id*.) In response, Thomas asserts that his claims only relate to harms he suffered between March 2021 to March 2023. (ECF No. 50 at 4.) Construing the facts in the light most favorable to Thomas, the Court agrees that even if Thomas had gastrointestinal issues for some time, the claims alleged in this case arise from conduct by the named defendants that occurred between March 2021 to March 2023 and would not be subject to dismissal based on the statute of limitations.

In opposition to Defendants' motion, Thomas does not point to any grievance related to these gastrointestinal issues that were fully exhausted prior to the filing of his complaint in March 2023. (ECF No. 50 at 3.) Rather, Thomas appears to concede that he failed to complete the grievance process prior to filing complaint but argues he "moved forward with the Grievance Process" after he filed this lawsuit. (*Id.*) Although Thomas admits this was "improper," he argues the PLRA does not require full exhaustion "before a case can be decided." (*Id.*) Thomas does not argue that administrative remedies were unavailable to him prior to filing this lawsuit.

In reply, Defendants argue that summary judgment must be entered based on Thomas's concession that he failed to exhaust his administrative remedies prior to filing this lawsuit. (ECF No. 52.)

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit

attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits,

and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.   DISCUSSION

Defendants argue that summary judgment should be entered because Thomas failed to exhaust his administrative remedies prior to filing this lawsuit. (ECF No. 44 at 7-

8.) Under the Prison Litigation Reform Act "(PLRA")," "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id*. at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing Woodford, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id*. at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate*. Albino*, 747 F.3d at 1172. If the defendant makes

such a showing, the burden shifts to the inmate to "show there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

### A.  NDOC's Inmate Grievance System

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See* ECF Nos. 44-6, 44-7.)[5] The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (ECF No. 44-7 at 11.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's grievance at this, and all subsequent levels." (*Id*. at 12.)  NDOC staff is required to respond within forty-five days. (*Id*. at 13.)

Per AR 740, a grievance at any level may be either, "granted, denied, partially granted, abandoned, duplicate, not accepted, or grievable, resolved, settled, withdrawn; or referred to the Office of the Inspector General." (ECF No. 44-7 at 3.) If a grievance is "granted" or resolved by "settlement" at any level, the grievance process is considered complete. (*Id*. at 6.) However, if a grievance is either "partially granted, denied, or resolved" at any level, the inmate must appeal the response to the next level for the grievance process to be deemed "complete" for purposes of exhausting their administrative remedies. (*Id*.)

The appeal of an informal grievance is called a "First Level Grievance" and must be filed within 5 days of receiving a response. (*Id*. at 13.) A First Level Grievance should

---

[5]   AR 740 was updated and modified during the time frames applicable to this case. In this case, two different versions of AR 740 were in effect during the facts of this case. (*See* ECF Nos. 44-6 (effective November 20, 2018); 44-7 (effective April 28, 2022).) For clarity, all references to AR 740 in this order will be made to the April 28, 2022 version of AR 740 unless otherwise noted. (ECF No. 44-7.)

1  be reviewed, investigated, and responded to by the Warden at the institution where the
2  incident being grieved occurred; however, the Warden may utilize any staff in the
3  development of a grievance response. (*Id.*) The time limit for a response to the inmate is
4  forty-five days. (*Id.* at 14.)

5  Within five days of receiving a First Level response, the inmate may appeal to the
6  Second Level Grievance, which is subject to still-higher review. (*Id.* at 15*.*) Officials are to
7  respond to a Second Level Grievance within sixty days, specifying the decision and the
8  reasons the decision was reached. (*Id.*at 15.) Upon receiving a response to the Second
9  Level Grievance, the inmate will be deemed to have exhausted his administrative
10 remedies and may then file a civil rights complaint in federal court.

11 **B.    Analysis**

12 In this case, Defendants argue Thomas failed to properly exhaust his
13 administrative remedies because he did not appeal any grievances prior to filing this
14 lawsuit through all the necessary grievance levels. (ECF No. 44 at 7-8.) To support their
15 arguments, Defendants submitted authenticated and admissible copies of Thomas's full
16 inmate grievance history dating back to 2008 forward, a copy of the only grievance that
17 was appealed to the First Level, and a declaration from Associate Warden Mario Portillo
18 authenticating these documents. (*See* ECF No. 44-3 (Thomas's Inmate Grievance
19 History); ECF No. 44-4 (Copies of Grievance No. 20063132081); ECF No. 44-9
20 (Authenticating Declaration).)

21 A careful review of these records supports Defendants arguments. Although
22 Thomas did file several grievances related to his gastrointestinal issues, he only filed an
23 appeal to the First Level for one of those grievances, Grievance No. 20063132081
24 ("Grievance 2081"). (*See* ECF No. 44-3.)  Thomas initiated Grievance 2081 on January
25 8, 2022 by stating that he was expiring stomach pains, blood in his stools and his condition
26 was getting worse. (ECF No. 44-4 at 7-8.) Thomas was provided a response of "partially
27 granted" to this grievance on October 17, 2022. (ECF No. 44-3 at 8; ECF No. 44-4 at 6.)
28 Thomas appealed this response to the First Level on October 19, 2022. (ECF No. 44-3

at 2; ECF No. 44-4 at 8.) Thomas received a response to First Level Grievance on February 21, 2023, which stated that the grievance was "resolved." (ECF No. 44-4 at 2.) Per AR 740, a grievance that is deemed "resolved," must still be appealed to the Second Level before it is deemed exhausted. (ECF No. 44-7 at 6.) This lawsuit was filed on March 24, 2023. (ECF Nos. 1, 1-1.) However, according to the records submitted by Defendants, Thomas did not appeal the First Level response to Grievance 2081 to the Second Level prior to filing this lawsuit as mandated by AR 740. (*See* ECF Nos. 44-3.)

In his opposition, Thomas _concedes_ he did not file his Second Level Grievance prior to filing this lawsuit. (ECF No. 50 at 3.) Thomas expressly acknowledges and admits that he filed his Second Level Grievance for Grievance 2081 _after_ he filed this lawsuit. (*Id*.) Although Thomas admits that filing this lawsuit prior to filing his Second Level Grievance was "improper," he asserts that his claim can "still be considered exhausted because it was finalized" and the prison rules are not statutes. (ECF No. 50 at 3.) To show the Second Level Grievance was eventually "finalized," Thomas attaches his Second Level Grievance for Grievance 2081 to his opposition, which is dated April 26, 2024 -- over one year after this lawsuit was initiated. (*Id*. at 22.)

Contrary to Thomas's arguments, it is well established that the PLRA requires "proper exhaustion" of an inmate's claims. *See Woodford*, 548 U.S. at 90. Proper exhaustion means an inmate must "use _all_ steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119 (citing *Woodford*, 548 U.S. at 90) (emphasis added). Additionally, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Here, it appears Thomas failed to follow all required steps to allow prison officials to reach the merits of the issue as he failed to file any grievance related to the claims in this case past the First Level prior to filing this lawsuit. Accordingly, the Court finds that Thomas failed to exhaust his administrative remedies pursuant to NDOC Administrative Regulation 740 prior to initiating this action. As such, Defendants have met their burden to establish that Thomas failed to exhaust his administrative remedies in his case.

The burden now shifts to Thomas "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). However, Thomas provides no evidence to show that administrative remedies were unavailable to him. Because Thomas presents no evidence that administrative remedies were effectively "unavailable," the Court concludes that Thomas failed to exhaust available administrative remedies prior to filing this action and Defendants' motion for summary judgment must be granted.[6]

## IV.    CONCLUSION

Consistent with the above, **IT IS ORDERED** that Defendants' motion for summary judgment, (ECF No. 44), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**IT IS SO ORDERED.**

**DATED**: January 28, 2025

                                                        _____
                                                        **UNITED STATES MAGISTRATE JUDGE**

---

[6] Having determined that Thomas failed to exhaust his administrative remedies, the Court need not address Defendants' remaining arguments in favor or summary judgment.